FILED'11 AUG 23 9:13USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,                                   Civ. No. 08-426-CL

                    Plaintiff,

                                                  REPORT & RECOMMENDATION

            v.

EUGENE "GINO" CASTERNOVIA, individually
and d/b/a SOUTHERN OREGON RESOURCE
CENTER EDUCATIONAL SERVICES ("SORCE"),
d/b/a CASTLENUEVO, INC., d/b/a EXECUTIVE'S
RESOURCE, LLC.; ROBERT HAGOPIAN;
ROBERT "ROB" PENDELL; and MARK LYON,

                    Defendants.
_____

CLARKE, Magistrate Judge.

## INTRODUCTION

This matter comes before the court on motion (#167) by defendant Robert "Rob"

Pendell[1] ("Pendell") for judgment on the pleadings, and the United States' cross motion (#178)

for summary judgment. For the reasons stated below, Pendell's motion should be DENIED, and

the United States' motion should be GRANTED.

---

[1] Defendant Pendell was incorrectly identified in the Complaint (#1) as "Rod Pendell" (Answer, Dckt. # 32, 3, ¶ 10) but properly identified in the Amended Complaint (#113) as Robert "Rob" Pendell. The court notes Pendell has subsequently been identified in pleadings alternatively as "Robert Leighton Pendell" and "Robert L. Pendell." (*See* # 137, # 167).

## PROCEDURAL HISTORY

On April 27, 2008, the United States commenced this action against defendants Eugene "Gino" Casternovia d/b/a Southern Oregon Resource Center Educational Services ("SORCE") d/b/a Castlenuevo, Inc., d/b/a Executive's Resource, LLC; Robert Hagopian; Mark Lyon, and Pendell. The Complaint (#1) alleged that the named defendants were engaging in conduct subject to penalty under the Internal Revenue Code, 26 U.S.C. ("I.R.C") § 6700. On the basis of this alleged conduct, the United States sought to restrain and enjoin the defendants from further engaging in this activity as provided by I.R.C. §§ 7402 and 7408.

On January 6, 2009, the court stayed (#60) further proceedings in this action pending the resolution of criminal charges filed in the Northern District of Florida against Pendell, Eugene "Gino" Casternovia, Mark Lyon, and other individuals not defendants in this action. In 2010, a judgment of acquittal was entered in favor of Pendell on all charges in that action. See U.S. v. Hirmer, 767 F. Supp. 2d 1305, 1306 (N.D. Fla. 2011). On December 30, 2010, the United States filed an Amended Complaint (#113) substantially identical to the original Complaint both in terms of the conduct alleged and the relief sought. Of the defendants named in the Amended Complaint, only Pendell remains as a defendant in this action.[2]

## FACTUAL BACKGROUND

On a motion for summary judgment, the court may consider any properly authenticated extrinsic evidence offered by the parties which would be admissible at trial, whereas on a motion for judgment on the pleadings, the scope of the court's review is limited to the allegations in the

---

[2] A Stipulated Judgment of Permanent Injunction (#54) was entered against defendant Mark Lyon on November 21, 2008. The United States voluntarily dismissed all claims against defendants Robert Hagopian, Castlenuevo, Inc., and Executive's Resource, LLC. (#163, 191). The court granted (#187) the United States' motion (#170) for entry of Judgment by Default of Permanent Injunction against defendant Eugene "Gino" Casternovia on June 29, 2011.

pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. The

court therefore separately identifies the facts relevant to the parties' respective motions.

## A. Facts Relevant to Motion for Judgment on the Pleadings

On its face, the United States' Amended Complaint contains the following factual

allegations:

Pendell[3] "promoted tax scams that involve the sale and use of sham entities" through

SORCE and a related multilevel marketing organization called Pinnacle Quest International

("PQI"), and "organized and marketed their programs as a fraudulent means for customers to

evade the reporting and payment of federal taxes, as well as a way for customers to conceal their

assets to evade IRS tax collection efforts." (Am. Compl., at 4, ¶ 12). PQI is a successor

organization to the Institute for Global Prosperity ("Global Prosperity"), and was formed for the

purpose of promoting tax scams after Global Prosperity was ordered to cease and desist its

operations by five state attorneys general. (Id., at ¶ 15).

Pendell performed work and consulting services for SORCE and defendant Casternovia.

(Id., at 3, ¶ 9). On February 23, 2005, Pendell appeared as a representative for SORCE in a

videotaped interview. (Id., at 9, ¶ 31). In this interview, Pendell stated that participation in the

Internal Revenue tax system is voluntary and that SORCE provided its customers "with the tools

in which to extricate themselves from that system" and "reclaim their productivity" by taking

"that extra 20, 30, 40 percent" for themselves. (Id.). This video was subsequently broadcast and

posted online to promote SORCE and its products. (Id.).

//

---

[3] Most of the allegations in the Amended Complaint are asserted generally against all the named
defendants including Pendell, who at this stage of the litigation is the only remaining defendant
in this action. Therefore, for the purpose clarity, such general allegations are identified in this
opinion as being made against Pendell.

Pendell helped to promote and sell programs that were used by at least 16 customers to fraudulently under-report their income on their federal tax returns or stop filing federal tax returns altogether despite being legally required to do so. (Id. at 9-10, ¶ 33, 35). Pendell knew or had reason to know that the statements he made to SORCE customers regarding the tax benefits of SORCE's programs were false and fraudulent. (Id. at 9, ¶ 34). As a result of his actions, United States has suffered harm including lost revenue due to the failure of SORCE customers to file accurate tax returns, and expenses incurred due to IRS investigations of defendant's customers. (Id. at 10, ¶¶ 36-39). Moreover, Pendell's actions have caused harm to the public because his actions undermine public confidence in the fairness of the federal tax system and incite public noncompliance with internal revenue laws. (Id.)

**B. Facts Relevant to Motion for Summary Judgment**

Viewed in the light most favorable to Pendell, the evidence in the record on summary judgment demonstrates the following:

SORCE was founded in 2000 or 2001. (Decl. of John Monroe iso Mot. for Summ. J. ("Monroe Decl."), Ex. 15 at 2, 19). SORCE is a successor organization to the Ashland Resource Center ("ARC"), which was founded and operated by John David Van Hove, also known as "Johnny Liberty." (Id.) In April 2005, Mr. Van Hove was indicted for "obstructing and impeding the administration of the tax laws" and wire fraud. (Pl.'s Concise Statement of Material Facts ("CSMF") at 2, ¶ 6). In June 2006, Van Hove pleaded guilty to one count of wire fraud and one count of obstructing and impeding the administration of the tax laws. (Id., at ¶ 7). Pendell was aware of Mr. Van Hove's criminal indictment and conviction when they occurred. (Id., Ex. 14 at 7). Pendell and SORCE continued to sell Mr. Van Hove's products after his conviction. (Id.).

In late 2005, SORCE began doing business as Executive's Resource Center ("ERS"). (Id., Ex. 14 at 3). In May of 2006, the IRS raided SORCE at the new ERS office and confiscated files and computers. (Id. at 5, 20). At that time, Pendell became aware that the IRS was investigating SORCE. (Id. at 5; Monroe Decl., Ex. 15 at 7, 23).

Pendell was introduced to the "corporate reorganization" field in 1989, when he and a mentor entered into a bet to see which could "reduce their tax liability to zero first" using corporations. (Pl's CSMF, Ex. 14 at 16-18). Pendell began working professionally as a "corporate consultant" with SORCE in late 2002. (Id., Ex. 14 at 11). Pendell worked at SORCE and ERS for approximately five years. (Id., Ex. 14 at 3). Pendell promoted SORCE and ERS and their products through their websites and by attending seminars and PQI events attended by thousands of potential customers. (Id., Ex. 14 at 9-10). He attended approximately eight to ten seminars, seven to eight offshore PQI events, and numerous smaller PQI events around the country every year. (Id.). Pendell also maintained the websites for SORCE and ERS. (Id., Ex. 14 at 13).

Pendell also represented SORCE at "Executive College" classes. (Id., Ex. 14 at 12). The purpose of the Executive College classes was to assist customers who had purchased SORCE products with the paperwork involved. (Id., Ex. 14 at 12-13). Through these classes, Pendell provided "unlimited consultation" to customers on how to set up a corporation or LLC and move their personal or business assets to that corporation in order to avoid paying taxes. (Id.)

In his February 23, 2005 videotaped interview promoting SORCE and its products, Pendell stated that participation in federal taxation under the Internal Revenue System and Social Security System was voluntary, equated the payment of taxes under these systems to slavery, and

stated that SORCE products enabled its customers to "reclaim their sovereign rights" by opting out of these voluntary. (Id., Ex. 10 at 2-5).

On October 8, 2005, Pendell met with undercover IRS agents posing as potential SORCE customers. (Id., Ex. 14 at 19; Ex. 11). Pendell explained that SORCE could help deceive the IRS by sheltering investment gains from federal taxes using a sham foundation and sheltering their business profits using a "Panamanian company." (Id., Ex.11 at 2-5, 12). Pendell also told the agents that none of SORCE's clients had ever gotten into trouble with the IRS for activities related to SORCE. (Id., Ex. 11 at 10). Pendell assured the agents that if any IRS issues should arise, SORCE would make referrals to "competent legal assistance" that would be able to provide assistance. (Id., Ex. 11 at 11). These representations Pendell made during this meeting were typical of how he marketed SORCE and its products to other customers and at seminars. (Id., Ex. 14 at 19).

SORCE had at least 350 customers. According to its internal records, SORCE made over $1.6 million in 2005 through the sale of their programs. (Id., Ex. 9 at 12). The programs SORCE offered ranged from $150 for one hour of consultation to $9,295 for the "Ultra Private Asset Protection w/ Real Estate & Auto." (Id., Ex. 6). One customer, Ms. Willen, had a free phone consultation with a person named "Rob" and subsequently purchased a SORCE product for $10,195. (Id., Ex. 13 at 44-45). Ms. Willen understood that this SORCE product would create a "kite structure" of onshore and offshore entities that would provide her and her husband with "financial privacy" by allowing them to "filter" income from their business through these organizations without the money being associated with their social security numbers, enabling them to avoid paying taxes. (Id. at 45-46). Based on these representations, Willen and her husband did not file federal income tax returns in 2004 and 2005. (Id., at 49). As a result,

Page | 6 – REPORT AND RECOMMENDATION

Willen and her husband incurred back taxes and penalties owed to the IRS. (Id. at 50). In 2010, the outstanding balance of this debt was $68,000. (Id.).

In November 2007, Pendell left ERS. (Id., Ex. 14 at 3-4). After he left ERS, Pendell continued to receive emails with questions from SORCE and ERS customers seeking assistance. (Id., Ex. 14 at 15). As late as 2008, Pendell continued to answer these questions. (Id.). He continued to receive similar contacts continuing into 2010, primarily by phone. (Id., Ex. 14 at 16). However from 2010 on, Pendell declined to answer these questions, informed the persons inquiring that he was under indictment for answering similar questions and was no longer in that business. (Id.).

## I. PENDELL'S MOTION FOR JUDGMENT ON THE PLEADINGS

Pendell admits that he has violated I.R.C. § 6700. (Def. Robert L. Pendell's Mem. iso Mot. for J. on the Pleadings, at 2). Despite this admission, he argues he is entitled to judgment on the pleadings in his favor because the United States fails to allege any facts demonstrating that an injunction is appropriate to prevent recurrence of this conduct.

### Standard

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is "functionally identical" to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); therefore, the same legal standard applies to both motions. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Dismissal of a complaint for failure to state a claim is improper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, -- U.S. --, --, 129 S.Ct. 1937, 1950 (2009) (*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). The issue is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See* Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974), *overruled on other grounds by*

Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982). When evaluating a Rule 12(b)(6)
motion, the Court must accept as true all allegations of material facts that are in the complaint,
and must construe all inferences in the light most favorable to the non-moving party. Moyo v.
Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994). Judgment on the pleadings is therefore appropriate
only "when the moving party clearly establishes on the face of the pleadings that no material
issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Enron
Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d 526, 529 (9th Cir. 1997) (citation
omitted).

### Discussion

The United States seeks injunctive relief under two statutory provisions, I.R.C. §§7408
and 7402. The court considers each in turn.

### 1. I.R.C. § 7408

I.R.C. § 7408 authorizes the United States to commence an action in federal district court
to enjoin a person from engaging in conduct subject to penalty under specified I.R.C. provisions,
including I.R.C. § 6700. I.R.C. § 7408(a), (c)(1). If the court finds the person has engaged in
such "specified conduct," it may then enter injunctive relief "if appropriate to prevent recurrence
of such conduct." I.R.C. § 7408(b).

In this case, the United States alleges Pendell engaged in conduct subject to penalty under
I.R.C. § 6700. To prevail on the merits of this claim, the United States was required to prove
that Pendell: (1) organized, assisted in the organization of, or sold an entity, plan or
arrangement; (2) made or furnished statements concerning tax benefits to be derived from the
entity, plan, or arrangement; (3) that he knew or had reason to know the statements were false or

fraudulent; and (4) the false or fraudulent statements pertained to a material matter.  26 U.S.C. §
6700(a); U.S. v. Estate Pres. Servs., 202 F.3d 1093, 1098 (9th Cir. 2000).

       The United States' Amended Complaint alleges that Pendell (1) sold programs and
products through SORCE and ERS; (2) promoted SORCE and ERS products as allowing
purchasers to "extricate themselves" from the Internal Revenue tax system and that participation
in the Internal Revenue tax system was "voluntary"; (3) he knew or had reason to know that
these statements were false; and (4) the programs which Pendell helped promote and sell were
used by at least 16 customers to fraudulently under-report their income on their federal tax
returns or stop filing federal tax returns altogether despite being legally required to do so.  This is
sufficient to state a plausible claim for violation of I.R.C. § 6700.  If the United States were to
prevail on the merits, it would therefore be entitled to seek injunctive relief under I.R.C. § 7408.

       Pendell does not dispute the sufficiency of these allegations; to the contrary, he *admits* he
has violated I.R.C. § 6700.  Instead, he argues he is entitled to judgment on the pleadings in his
favor because the Amended Complaint fails to allege sufficient facts to prove that injunctive
relief is appropriate under I.R.C. § 7408.  This argument is without merit.  The basis for
injunctive relief in federal court is irreparable injury and the inadequacy of legal remedies.  *See*
Weinberger v. Romero-Barcello, 456 U.S. 305, 312, 102 S.Ct. 1798 (1982).  Generally, a
plaintiff must satisfy these general equitable requirements by showing a significant threat of
irreparable injury and that the legal remedies are inadequate.  *See* Arcamuzi v. Cont'l Airlines,
Inc., 819 F.2d 935, 937 (9th Cir. 1987).  However, these traditional requirements need not be
satisfied in actions under I.R.C. § 7408 because the statute itself expressly authorizes the
issuance of an injunction.  Estate Pres. Servs., 202 F.3d at 1098.  As described above, the United
States has alleged sufficient facts to state a plausible claim that Pendell has engaged in "specified

Page | 9 – REPORT AND RECOMMENDATION

conduct" I.R.C. § 7408. This is sufficient to support the claim for injunctive relief under I.R.C. § 7408.

For the reasons stated above, Pendell's motion should be DENIED with respect to the United States' claim under I.R.C. § 7408.

## 2. I.R.C. § 7402

Pendell's motion likewise fails as to the United States' claim for injunctive relief under I.R.C. § 7402. I.R.C. § 7402 grants federal district courts the authority "to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." I.R.C. § 7402(a). As described above, the United States alleges sufficient facts to state a plausible claim that Pendell's has violated I.R.C. § 6700, that his conduct has resulted in significant understatements of tax liability by SORCE and ERS customers and, consequently, is subject to an injunction under I.R.C. § 7402. *See* U.S. v. Cohen, 222 F.R.D. 652, 657 (W.D. . Wash. 2004) (United States entitled to injunction under I.R.C. § 7402 for defendant's provision of false and fraudulent tax advice through his website and sales of forms and documents that resulted in substantial understatements of tax liabilities).

For the reasons stated above, Pendell's motion should be DENIED with respect to the United States' claim under I.R.C. § 7402.

### Conclusion

For the reasons stated above, Pendell's motion for judgment on the pleadings should be DENIED.

## II. THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

The United States argues that the undisputed evidence in the record demonstrates that Pendell has engaged in conduct which is subject to penalty under I.R.C. § 6700, therefore it is

Page | 10 – REPORT AND RECOMMENDATION

entitled to judgment in its favor as a matter of law and is entitled to the injunctive relief it seeks
under I.R.C. §§ 7408 and 7402.

### **Standard**

Summary judgment is appropriate when the materials in the record demonstrate that there
is no genuine issue as to any material fact and the moving party is entitled to judgment as a
matter of law. FED. R. CIV. P. 56(c). This standard requires more than the mere existence of
some factual dispute between the parties to defeat an otherwise properly supported motion for
summary judgment; "the requirement is that there be no *genuine* issue of *material* fact."
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986) (emphasis in
original). A fact is "material" if, under the substantive law applicable to the case, it is capable of
affecting the outcome of the litigation. Id. A dispute is a "genuine" for summary judgment
purposes if the "evidence is such that a reasonable jury could return a verdict for the non-moving
party." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (*quoting*
Anderson, 477 U.S. at 248).

In seeking summary judgment, the moving party "bears the initial responsibility of
informing the district court of the basis for its motion, and identifying those potions [of the
evidence in the record] which it believes demonstrate the absence of a genuine issue of material
fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2584 (1986). The court views the
evidence in the light most favorable to the non-moving party and draws all reasonable inferences
in his favor. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996), *cert denied*, 522 U.S. 808,
118 S.Ct. 48 (1997).

If the moving party shows that there are no genuine issues of material fact, the
nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.

Page | 11 – REPORT AND RECOMMENDATION

Celotex, 477 U.S. at 322-23.  Conclusory allegations, unsupported by factual material, are

insufficient to defeat a motion for summary judgment.  Taylor v. List, 880 F.2d 1040, 1045 (9th

Cir. 1989).  Instead, the opposing party must produce specific evidence, through affidavits or as

otherwise provided by Rule 56, to show that there is a genuine issue for trial.  Devereaux v.

Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

### Discussion

In response to the United States' motion, Pendell again admits that he has engaged in

conduct which violates I.R.C. § 6700.  (Def. Pendell's Resp. to Pl's Mot. for Summ. J., at 3).

However, he opposes the motion on grounds that a genuine issue of material fact as to whether

an injunction is required to prevent him from violating I.R.C. § 6700 in the future precludes

summary judgment.  This argument simply misses the point.

The summary judgment standard applies to the merits of the alleged substantive

violation:  here, United States' claim that Pendell has violated I.R.C. § 6700.  Pendell has twice

admitted this claim is meritorious.  The United States is therefore entitled to summary judgment

in its favor on the issue of whether Pendell has violated I.R.C. § 6700.  Therefore, the only

remaining issue is whether a permanent injunction is necessary or appropriate under I.R.C. §§

7408 and 7402.  The court therefore proceeds to that analysis.

### The United States' Entitlement to Injunctive Relief

The determination whether to issue an injunction lies solely within the discretion of the

court.  The United States need only prove by a preponderance of the evidence that "injunctive

relief is appropriate to prevent recurrence of that conduct."  Estate Pres. Servs., 202 F.3d at 1098.

The Ninth Circuit has outlined six factors a court "may" consider when weighing the likelihood

of recurrence and therefore the necessity for an injunction:  (1) the gravity of the harm; (2) extent

Page | 12 – REPORT AND RECOMMENDATION

of defendant's participation; (3) defendant's degree of scienter; (4) recurrent nature of the infraction; (5) defendant's recognition of culpability; and (6) likelihood defendant's occupation will place him somewhere future violations can be anticipated. Id. at 1105. The court addresses each factor in turn.

## 1. Gravity of Harm

Pendell's conduct has resulted in serious harm to the United States, not only in the form of understatements of liability but also the administrative burden on the IRS of auditing, investigating, and collecting taxes from SORCE and ERS customers. SORCE and ERS customers have also suffered harm in the forms of audits and assessments of back taxes and penalties.

Pendell argues these harms should not be considered by the court as the United States fails to identify with particularity the any individual who specifically relied on advice that he personally provided. However, the undisputed evidence shows that SORCE had at least 350 customers; that Pendell helped SORCE customers attempt to defraud the IRS; that SORCE customers that the United States will be forced to expend its limited resources in an attempt to identify and audit these customers; and, even if it is able to do so, it may not be able to recover the outstanding amounts due. This is sufficient to demonstrate that the United States has suffered severe harm. *See* U.S. v. Harkins, 355 F.Supp.2d 1175, 1181 (D. Or. 2004). Given the extent and continuity of Pendell's participation the promotion and sale of SORCE and ERS products, discussed separately below, the court finds that these harms are attributable to Pendell. This factor therefore weighs in favor of granting the injunction.

## 2. Extent of Pendell's Participation

The undisputed evidence shows that Pendell's participation in SORCE's fraudulent tax scheme was both extensive and continuous. Pendell became personally involved in fraudulent tax schemes in 1989 and in the five years he promoted these schemes professionally for SORCE and later ERS represented that he had been in the business. During his employment, Pendell directly and personally promoted the fraudulent tax schemes sold by SORCE and ERS by attending multiple seminars and PQI events every year, maintaining websites for SORCE and ERS, and assisting SORCE customers with the implementation of those tax schemes through SORCE's Executive College. This evidence is sufficient to prove that Pendell is both relatively sophisticated in the field of federal taxation and that his activities were both extensive and continuous. *See* U.S. v. Cohen, 222 F.R.D. 652, 657 (W.D. Wash. 2004). This factor weighs in favor of entering the injunction.

### 3. Pendell's Degree of Scienter

Whether a person has reason to know that his actions violate § 6700 is determined under a subjective reasonableness standard. Harkins, 355 F.Supp.2d at 1180 (*quoting* Estate Pres. Servs., 202 F.3d at 1103). In promoting and selling SORCE and ERS products, Pendell informed prospective clients that participation in the federal taxation system administered by the IRS was voluntary. Even a cursory examination would have revealed that this statement is baseless and contrary to the law. Courts have, on numerous occasions, concluded that the IRC imposes a tax on all income, wages are income, and paying taxes is not voluntary. In re Becraft, 885 F.2d 547, 548 n. 2 (9th Cir. 1989); Wilcox v. Comm'r of Internal Revenue, 848 F.2d 1007, 1008 (9th Cir. 1988); U.S. v. Sloan, 939 F.2d 499, 500-01 (9th Cir. 1991). The Sixteenth Amendment to the United States Constitution authorizes the United States Congress to impose a federal income tax on citizens and residents of the United States. Wilcox, 848 F.2d at 1008 n. 3.

"Like it or not, the Internal Revenue Code is the law." Ryan v. Bilby, 764 F.2d 1325, 1328 (9th Cir. 1985). Under the subjective reasonableness standard, this is sufficient to prove that Pendell should have known his actions were violating § 6700. This factor weighs in favor of entering the injunction.

### 4. Recurrent Nature of the Infraction

The undisputed evidence shows that Pendell continued to work for SORCE selling products designed by Van Hove for SORCE's predecessor, ARC, despite knowing that Van Hove had been indicted and convicted on criminal charges relating to those products; that he continued to work for SORCE and ERS until November 2007 despite becoming aware in 2006 that IRS was investigating SORCE and ERS for similar reasons; and that as late as 2008 he continued to advise SORCE and ERS customers on how to implement SORCE and ERS products even though he no longer worked there. This factor weights in favor of entering the injunction.

### 5. Pendell's Recognition of His Own Culpability

Pendell has twice admitted he is culpable of violating IRC 6700. This factor weighs against entering the injunction.

### 6. Likelihood Pendell's Occupation Will Place Him Somewhere Future Violations Can Be Anticipated

Pendell argues that, despite his past behavior, there is no risk that he will violate § 6700 in the future because he is pursuing a new career as a theatre manager. However, Pendell has known for more than twenty years how to defraud the IRS, he played a major role in promoting SORCE and ERS's lucrative tax schemes even after becoming aware of an IRS investigation, and he continued to promote these schemes even after leaving ERS. Additionally, Pendell continued to advise SORCE customers regarding the implementation of SORCE's programs as

Page | 15 – REPORT AND RECOMMENDATION

late as 2008, and he continues to be contacted by individuals seeking advice on similar tax evading strategies. The magnitude and duration of his previous violations, as well as the continued attempted contacts by SORCE customers seeking further assistance, undermines Pendell's assurance that he will not violate § 6700 in the future. This factor weighs in favor of entering the injunction.

### Conclusion

For the foregoing reasons, the court concludes that a permanent injunction against Pendell is both necessary and appropriate to prevent future similar conduct. The United States motion for summary judgment should therefore be GRANTED in its entirety.

### RECOMMENDATION

For the reasons stated above, Pendell's motion for judgment on the pleadings (#167) should be DENIED, the United States' motion for summary judgment (#178) should be GRANTED, and a permanent injunction should be entered against Pendell pursuant to I.R.C. §§ 6700, 7408, and 7402, as follows:

Robert "Rob" Pendell, a/k/a Robert L. Pendell, a/k/a Robert Leighton Pendell, his representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them, are hereby permanently enjoined from directly or indirectly:

(1) Organizing, promoting, marketing, or selling the SORCE or Executive's Resources' program or any other schemes described in this complaint, or any other plan or arrangement that assists or advises customers to attempt to violate the internal revenue laws or unlawfully evade the assessment or collection of their federal tax liabilities;

Page | 16 – REPORT AND RECOMMENDATION

(2) Engaging in conduct subject to penalty under 26 U.S.C. § 6700, i.e., by making or furnishing, in connection with the organization or sale of a plan or arrangement, a statement about the securing of any tax benefit that the defendants know or have reason to know to be false or fraudulent as to any material matter under the federal tax laws;

(3) Engaging in any conduct that interferes with the administration and enforcement of the internal revenue laws;

(4) Engaging in any other activity subject to penalty under the Internal Revenue Code.

Further, defendant Robert "Rob" Pendell, a/k/a Robert L. Pendell, a/k/a Robert Leighton Pendell, or anyone in active concert or participation with him, is:

(1) Required to produce to the United States a list identifying (with names, mailing and email addresses, phone numbers and social security and any other tax-identification numbers) all persons who have purchased a SORCE or Executive's Resources' program or services, and to file with the Court, within 20 days of the date the permanent injunction is entered, a certification that he has done so;

(2) Required to resign as the registered agents of any corporation purchased through SORCE or Executive's Resources, and to file with the Court within 20 days of the date the permanent injunction is entered, a certification that have done so;

(3) Prohibited from filing papers or other documents on behalf of others with state agencies regulating corporations, including corporate annual reports or new corporate registrations with the State of Oregon or any other state.;

(4) Contact by mail at their own expense, all individuals who have previously purchased SORCE or Executive's Resources' programs, or any other plan or program in which

the defendants have been involved, either individually or through any business entity, and inform those individuals of the Court's findings concerning the falsity of the defendants' prior representations, the defendants' resignation as the registered agent for their customers' corporation, and attach a copy of the permanent injunction against the defendant, and to file with the Court, within 20 days of the date the permanent injunction is entered, a certification that he has done so;

(5) Required to remove from their websites and all other websites over which they have control, all tax-fraud scheme promotional materials, false commercial speech regarding the internal revenue laws, and speech likely to incite others imminently to violate the internal revenue laws; display prominently at the top of the first page of those websites a complete copy of the permanent injunction, and to maintain it on those websites for one year.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*** Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. ***Objections to this Report and Recommendation, if any, are due by September 12, 2011. If objections are filed, any response to the objections is due by September 29, 2011.*** *See* FED. R. CIV. P. 72, 6.

DATED this _____ day of August, 2011.

_____

MARK D. CLARKE
United States Magistrate Judge